The first case today is number 191937 Christian Aguasvivas v. Michael Pompeo et al. The government will not extradite Christian Aguasvivas into the United States. If it determines that it is more likely than not that he will face torture abroad. The issue is who makes that decision. For the last 170 years, it has been the Secretary of State. The district court contravened Congress's express commands and over a century of precedent when it found otherwise. Separately, the court also misinterpreted the documentary requirements of the U.S. Dominican Republic extradition treaty. I plan to address each of these arguments in turn. Your honors, both Congress and the courts have long recognized that it is the Secretary of State's responsibility to evaluate claims regarding the fugitive's treatment that he will receive once extradited abroad. The beginning statute is 18 U.S.C. 3186 where Congress provided discretion for the Secretary of State to surrender a fugitive that has been certified pursuant to a court order under 18 U.S.C. 3184. As this court recognized in Ken Hogg, it is the Secretary of State who has the final determination over that matter. And the rule of non-inquiry precludes a court's review into the conditions that a fugitive may find when extradited abroad. That rule has also been enshrined by the Supreme Court's decisions in Munoz and Neely that there is no substantive due process right for a court to review the conditions that a fugitive will face abroad. And Congress did not change that with the enactment by the Senate's advice and consent of the Convention Against Torture. It's implementing legislation, the FAR Act and the Real ID Act. As this court recognized in St. Fort, the CAT is, quote, clearly not a self-executing treaty. It does not provide individual rights by its own accord. And in the FAR Act, Congress implemented that treaty simply by stating a policy. It stated that it's the policy of the United States not to extradite, expel or return individuals to a foreign country where they may face torture. Now, Congress's choice in implementing that policy was clear. It delegated the implementation of that policy to the relevant heads of departments. And in this case, for extradition, the relevant head of the department is the Secretary of State. So one turns to the regulations that the State Department promulgated pursuant to that enactment. And it makes clear that the Secretary will consider the issue of whether or not a fugitive will face torture abroad, that the department will analyze the issue, and that the Secretary may decide in his discretion to surrender, not surrender, or surrender with conditions based upon that analysis. But equally clear, those regulations make clear, just like the FAR Act itself, that any decision of the Secretary is not subject to judicial review. It's a matter for executive discretion, just as it always has been pursuant to the rule of non-inquiry. Now, if there were any ambiguity left after the FAR Act and the statutory regime, I would submit it was resolved by the Real ID Act, which, again, makes clear that only in the immigration context, as historically has been the case, can conditions of a fugitive return in a foreign country be evaluated by the Act. Can I ask you how these arguments relate to the fallback ripeness point that you make? So assume for a second that it's possible that there could be review of the cat per habeas. You make the argument it wouldn't be ripe anyway, because what would be reviewed at that point would be the Secretary's record and the Secretary's judgment, which hasn't been made. If that were true, if we agree with you on the ripeness point, would there be any reason or any problem with us not resolving the question of whether there could ever be habeas review of the cat issue? Your Honor, the Court might wish to resolve it as a matter of judicial economy, but I think nothing would require the Court to resolve it. Obviously, answering based on Your Honor's premise that there is habeas jurisdiction, the government obviously disagrees with that premise. Well, I guess what I'm asking is whether the ripeness point you make would make it permissible for us to essentially defer on the question of whether there is habeas jurisdiction, because even if there were, it wouldn't be ripe. I think that that would be one route that the Court could go, Your Honor. I think perhaps the more appropriate route in this instance, given the clarity of the statutes, would be to find that there is no jurisdiction and resolve it on that basis. But the ripeness route, as we've argued in our briefs, would certainly be a narrow ground that this Court could resolve the case on. And I think in order to do that, Your Honors would need to conclude that the requirements of res judicata collateral estoppel don't apply for the reasons we've set forth in our brief and for the reasons that this Court itself stated not that long ago in Castaneda Castillo that these are two completely separate regimes animated by different policy, different statutes, different requirements. I think those plainly don't apply. And so putting both the jurisdictional issue aside and the res judicata issue aside, I think the ripeness could be a narrow way for this Court to go, and it certainly wouldn't be unprecedented for the Court to do that. The Eleventh Circuit did it in Yacama-Meza. The Third Circuit did it in Hoxha. You know, that is, in my view, what made the district court's decision in this case so unprecedented, is that it's the only court that basically went out on its own not even to review the Secretary of State's decision but to impose its own decision through the BIA's decision in this case. So the ripeness point, I think, is one that is particularly apt and important in this case. Because that point wouldn't address the question of whether the appropriate documents were filed. That's right, Your Honor. That issue is separate and apart. And unlike the CAT issue, it's one that this Court clearly has jurisdiction over because it falls within the Fernandez standard of review. Before you get to that, could you explain how it does fall within Fernandez? Because when I read the Fernandez list, and this is something I'm puzzled, I don't doubt that there should be some way for us to have habeas review over it, but the Fernandez list doesn't seem to include within it, at least as I can tell, review of conditions of extradition under a treaty. It says there has to be jurisdiction in the reviewing court, right, the extraditing court. But as I understand it, the jurisdiction they're talking about there is the jurisdiction of the court, which is found in that federal statute that confers jurisdiction. It then talks about whether the crime falls within the treaty, when there's evidence of the crime, and whether there's jurisdiction over the person to be extradited. But conspicuously missing from that is a provision that would enable review of the conditions. I'm sorry, Your Honor, do you mean the conditions abroad or the documentary requirements? The documentary requirements or any conditions in a treaty. Right. Your Honor, I think that that argument does have some force to it, because that is exactly the language that the court used in Fernandez. Other courts have interpreted the second Fernandez bond, whether the crime encompassed in the treaty, haven't broadly interpreted it to, in effect, encompass whether or not the treaty requirements have been fulfilled in any given case. The government has advanced the argument that Your Honor posits in some cases and has not succeeded on it. But I do think it's a fair argument, Your Honor. Even if it were true, we would still potentially have habeas review over whether the treaty was complied with. Potentially, Your Honor, and I think the reason, I think that perhaps is the reason why some courts have interpreted the second prong of habeas review to basically be a more expansive review of whether or not the treaty is required. I think that's important, the point that Judge Kaczynski made in his Trinidad, dissenting in part, I believe concurring in part, opinion with regard to Valentine, which is a case that Mr. Aguas-Vivas relies upon, that he viewed the second requirement basically to have the treaty requirements been met in this case. And that's not exactly the language that the court used in Fernandez, but I think it's basically been interpreted as such by other courts. Just one last point, just so I understand what's happening. Is the Fernandez standard meant to be the standard for the habeas court or for the extraditing court? No, that's the habeas standard, Your Honor. The extraditing court has five discrete findings that it has defined. Sometimes, depending on whether or not you encapsulate subject matter jurisdiction, personal jurisdiction into one or not, but it's jurisdiction, whether there's a treaty in force, whether the crimes are encompassed in the treaty, basically whether the treaty requirements are met and whether probable cause exists. The Fernandez standard applies to habeas review because Fernandez itself was a habeas case before the Supreme Court. But to Your Honor's point about whether or not the district court's finding on the treaty point had merit, the government, for the reasons articulated in the brief, contends that it did not. And I think the starting point really is Article I of the treaty because Article I of the treaty imposes the obligation to extradite for individuals who've either been convicted or who are sought for prosecution. Now, that language, sought for prosecution, is very interesting because not all treaties have that language. Some other treaties, specifically the ones that the Seventh Circuit discussed in the case of Ray Aronson or Madera Aronson and the Ninth Circuit discussed in the Amami case, those treaties impose the obligation to extradite for individuals who have been charged with or convicted of an offense. So it's an interesting starting point here in Article I. The treaty itself, its application is triggered by merely individuals who are sought for prosecution. And then you move on to the documentary requirements of Article 7.3a and b. And the two requirements here that are at issue are, one, 7.3a, the requesting country has provided the document that's a warrant from a competent judge or judicial authority, and the document setting forth the charges against the fugitive. Now, both of those requirements fulfill different purposes. The warrant requirement basically proves that the foreign government has the capacity to detain or arrest the individual. And that's important in this regime because the United States is detaining or arresting the individual basically as a matter of comedy to the foreign court. Second, the document that sets forth the charges against the defendant or the fugitive, the purpose of that requirement is evident. It's because extradition courts certify extradition on a charge-by-charge basis. And that is important because of the rule of specialty, because extradition only pertains to the offenses upon which you've been extradited. And you're protected in the foreign country from prosecution on other offenses. So the reason why there are two separate requirements there is because they need to fulfill those two purposes. But there's nothing at all in the treaty. But there's nothing. What is the source other than you that that is the purpose of this requirement? Because I could just as easily say the purpose is to show that the jurisdiction-seeking extraditing has taken the offenses seriously enough that they, under their procedures, have indicted or filed a complaint. So who's to say that isn't the purpose as opposed to what you just said? Well, I believe in Grindy Shine, Your Honor, the court briefly discusses the purpose of the warrant. I know there is some discussion of the warrant in a slightly different context. But we're not talking about the warrant requirement here. Well, then, in that instance, Your Honor, I would turn to the cases that Aaron's saying to you. But those cases specifically say it would be a different circumstance if rather than using charge as a verb, charged with, the treaty had included language that used charges as a noun. And this treaty uses charges as a noun. Well, Your Honor, those treaties were of the type that I discussed before, where the obligation to extradite hinged on the fact that the individual had been charged. Your Honor makes a point that there's a notion that they were shaded. No, what it said there was it used the phrase charged with, just like sought for prosecution. And it said that alone did not mean you had to have formal charges. And its reasoning was when you looked at the documentary requirements, there was no requirement to include documents that had the charges. It says that specifically. Now, it says the formal charges, but it distinguishes between noun and verb. So I don't see how that case helps you. Well, Your Honor, I think the point Your Honor just made is a crucial one, that there is nothing here that says formal charges. And the cases that Your Honor posits all had to do with whether or not formal charges were required. The district court basically made that conclusion here. Yeah, but that's true. That's a distinction from the language in a sarson. But I guess that just takes you back to Judge Chiara's question, which is, well, there was a reference to the charges here. It's not just a general statement charged with. Then you look at the documentary requirements to see does that mean just accusations. What is the point of the provision that says the charges? Is there anything in the record that suggests you can have an arrest warrant or an order of detention that wouldn't identify the charge on which the arrest or detention is based? Well, the case law suggests that. There's an 11th Circuit case called Hill that basically says that an arrest warrant needs to list one charge but not all of them in the extradition context. So there are cases where you have an arrest warrant that, for example, only lists one of the offenses for arrest but the indictment or whatever the foreign equivalent is has been superseded in the meantime and there have been additional charges issued. So there's not necessarily a lineup between those two requirements. But I just would fall back to another position. Just follow that point up. Does that mean then that your reading is that when there is an arrest warrant and no indictment, the arrest warrant serves as the charges? No, Your Honor. It can, given the specific circumstances. Is that your argument that here that's what it is? Yes, Your Honor. The arrest warrant as it is in many civil law systems for these purposes. So the extradition request that includes an additional charge not in the arrest warrant can't be granted as to that charge on your theory, right? The extradition, well, Your Honor, here the arrest warrant, aside from one typo, included all of the charges for which extradition has been certified. I thought there was one that, is it 383 or something? Yes, 383 I believe mentions the punishment for robbery. It's not the actual robbery statute. The robbery statute, I believe, is the one that encompassed the typo. You would agree that insofar as there's a discrepancy in the extradition request has more charges in it than are in the arrest warrant, there's no basis for extradition as to that charge on your theory? Well, Your Honor, if it's a situation where the arrest warrant is the document setting forth the charges. That's what I'm asking you. Is this that situation? Well, yes, Your Honor. There needs to be a document on the record setting forth the charges. I can do that. Is that this one? Well, yes, and the requirement is fulfilled here, Your Honor. Thank you very much. Before you sit down, please, Judge Kayada has not yet had a chance to ask his questions. You seem to suggest in your brief that the Dominican Republic could not have simply indicted him until they'd arrested him. I don't see any support in the record for that. What do you point to for that? Well, I think perhaps the better statement is that the Dominican Republic availed itself of its own lawful procedure in the way that it is. So there's nothing keeping them from having moved at this whole issue just by going and getting an indictment because they assert they have plenty of probable cause? Your Honor, I don't know as a matter of Dominican law if that's the available procedure to them. I know what's described in the request. Isn't that a pretty big issue? Because one of the arguments in your brief suggests that because they couldn't, it would make no sense to interpret the treaty as we're trying to do something they couldn't do. Pretty good argument. But if, in fact, they can do it and not only easily do it solely within the control of the prosecutor, then it seems to cut the other way that makes it very plausible. They would have agreed that they'd only seek extradition in cases that they thought were serious enough that they'd have an indictment or at least a criminal complaint by the victims. My understanding, Your Honor, I think the government's argument is that they would not have negotiated a treaty that did not allow them to seek extradition when they had fulfilled all the terms of their criminal procedure to, in their view, seek prosecution of this individual. And that comes under the terms of the treaty. And I'd note, while I'm not an expert in Dominican law, the procedure that the Dominicans have followed in this case is, in effect, to allow Mr. Acquas Vivas more rights instead of less in their system because they're allowing him to be interviewed by the prosecutor before the formal accusation is filed there. So I don't know. Under the treaty's terms, I think it may be actually a distinction without a difference. But if the Court has no further questions, I'll reserve the rest of my time. Thank you, Your Honor. You may reserve the time. Good morning. May it please the Court, Amy Barsky for Petitioner at the League, Kristen Acquas Vivas. I want to start with the charging document issue that the Court just ended with. I want to add a couple of things. With regard to the factual issue of what charges are in the warrant and what charges have been certified for extradition, the two murder charges are in the warrant. One is a homicide and one is an enhancement. Then there's a 309, which the government contends is a typo. 309 is an assault, is my understanding from reading the Dominican penal code, which I initially read as a charge that he had assaulted the wounded officers rather than the decedent. 383 is robbery on a public road. The extradition request then asks for 379, which is robbery, and 383, which is robbery on a public road. I'm sorry, 383 is not in the warrant at all. So there are two charges, 379 and 383, which are substantive charges which have never been seen by a Dominican judge in any fashion. There's been no oversight and no finding of any probable cause as to those two charges. The government's argument that Mr. Acquas Vivas is wanted so that he can be interviewed and that that cuts in his favor, I think, number one, is unfounded, but number two is part of the idea behind that is that there's some kind of negotiation over the charges, which is what I understood the United States government's argument to be about Dominican law. That doesn't make any sense because the issue here is that there has to be a match between the charges selected and certified in the United States courts and the charges on which he's ultimately tried. So the government concedes at page five of its reply brief that where the warrant does not include any or all of the charges. That's a quotation from the reply brief. In that instance, there would be a separate charging document required, and it's clear here that the warrant does not include all of the charges. But just on your own theory, why couldn't the arrest warrant at least encompass the charges that the arrest warrant encompasses? Do you follow? In other words, when there's a gap between the extradition request and the arrest warrant, the arrest warrant would control on this theory, absent an indictment or a complaint that flushed it out. But why, just because there's a discrepancy when the arrest warrant does list some charges and those charges are encompassed by at least part of the extradition request, why isn't extradition proper at least with respect to those charges? I see the question. So my answer to that is that the warrant would be proper to fulfill an extradition treaty requirement that the government produce a warrant in that situation. It would not be proper. Okay, so what is the argument for that? Because that depends on a claim that the charges is a separate requirement from the arrest warrant requirement and that charges or crimes listed in the arrest warrant can't count as the charging document. So I think there are two different questions. And maybe it's helpful to look at Hill, which is the case the government just cited. In Hill, the court said... Before you go down that, are you back to your argument that two documents are required? And your answer? Yes, a warrant and a charging document. Okay, we understand that. Earlier you had said it makes no sense here to go forward on an arrest warrant if there is the possibility of the indictment that under Dominican law, the indictment process occurs after the defendant is extradited back and talks to the prosecutor. None of us are expert on Dominican criminal law, but at appendix 214, there's a reference to the prosecutor wants to know the version of the accused of how and why he perpetrated the facts imputed to him as unconditional mean to preserve the right of the defense of the accused. This seems to be a statement that under Dominican law, before an indictment is returned, the defendant must present defenses, if you will, to the prosecutor to preserve it at his defense at trial. If that's Dominican law, why wouldn't we honor it even though you think it makes no sense? Well, Your Honor, I don't read what Your Honor just read as stating that. I think at most... What does it mean? What it means is that in Dominican criminal procedure, there is an option to interview the accused prior to an indictment, but that... And they can't do that because he's not there. Well, but Dominican law on extradition is very clear that extradition may be requested of one who has been indicted. That has not been disputed by the Dominican Republic in any way. But as the government lawyer just said, Article I says, sought for prosecution doesn't say after indictment. That's correct, but I don't think sought for prosecution is dispositive in any way. Aren't we required to give that a broad reading, especially when both the State Department and the Dominican Republic say flatly that these, apart from the two-document problem, that these are in compliance with how one seeks for prosecution a fled defendant? If the treaty language is unambiguous, then no. The obligation of the court is to read the plain language of the treaty, and I think the language is unambiguous. It requires a warrant and a charging document. Okay, you're back to your two-document argument. Yes? Yes. Okay. I suppose you wouldn't have a problem with it being one document so long as that one document qualifies as both an arrest warrant, order of detention, and a document that sets forth the charges. Your argument seems to be that the arrest warrant here can't because if one understands Dominican procedure, it doesn't make sense to read the treaty to treat the arrest warrant as the same as the charging document. Is that right? I think that's right, and part of what has tripped me up from the beginning about the government's argument that it can be in the same document is I don't really care whether it's the same document or not. The substantive requirement is that there be an indictment, a formal accusation. Okay. I thought you were arguing there has to be an indictment. I am. As a matter of Dominican criminal procedure and that regardless of these other arguments, absent an indictment, there cannot be extradition. There cannot be an extradition request. Okay. Yes, that is what I'm arguing. Just to clarify, my understanding was that your position was that it has to be an indictment or its equivalent. Can it be a formal complaint? Was there no such thing in Dominican law? It has to be an accusacion, which is an accusation, which is defined by the Dominican Code of Criminal Procedure. As only an indictment, or is there another way to have that? Oh, it's called an accusation, and the requirements for that document are given. So that's what's required. I am equating that to an indictment, but I don't make a substantive assertion as to whether it's supposed to be an indictment or not. I see. There's a mechanism in which they give it, and that's what under Dominican law we don't, even the government concedes, we don't have that here. That's right. The government concedes that he hasn't been charged in a very practical, basic manner, that he's being requested so that he can be interviewed. Suppose we, a lot of this turns on how we interpret the word charges, setting forth the charges. If we read that as setting forth the accusations against him so the court knows what it has to measure, what's the object of its probable cause determination, I need to know what the accusations are, then it seems you have a problem. So we have to read charges as meaning some formal type of accusation, such as an indictment or a criminal complaint. Well, Your Honor, I want to disagree in part, and here's why. As the court reads the treaty, just as it would read a statute, it has to come up with a way to actually read the language, and the competing interpretation that the government has provided doesn't actually provide a roadmap to read the language of Article 7, Section 3, and here's why. So the document setting forth the charges against the person is an independent requirement. What the government is saying is that that's not surplusage, it's not being read as surplusage because there could be a situation in which a warrant does not list any or all of the charges. So let's give them that. Whether that situation exists in which the warrant doesn't list any of the charges, I don't know, but assuming arguendo, there's a situation in which the warrant does not list any of the charges, they're saying that in that situation a separate charging document would be required. Number one, I don't see any basis for reading the treaty to mean different things depending on the facts of the case. And number two, the government, even in that situation, has not offered any viable reading of the language. So what is the document setting forth the charges against the person in that situation? Is it a complaint or an indictment? Is it a post-it note that lists the charges? What if they said it's a complaint or an indictment? Not a post-it note. Well, if that's what the language, the document setting forth the charges against the person means. What do you think it means? You think it means the complaint or indictment, not a post-it note. So they could have the same view. But then why would it not mean that in all cases? Because it could also mean an arrest warrant. There just is a more inclusive view of what can count. So you need some argument as to why the word the charges excludes the arrest warrant, which is, I think, what Judge Caddo was asking you. What does the charges mean? Doesn't it, for your purposes, have to mean the formal complaint or indictment? And since we don't have that here, you win. But if you can't make that argument, then I don't see what your argument is. Well, I think it also has to mean the full set of the charges, not one of the charges. Well, if there are five accusations, he's accused of five crimes in the Dominican Republic, and the warrant only mentions three of them, then you're only going to get an extradition grant for the three if the warrant is sufficient as a document setting forth the charges. But I'm not sure the Dominican Republic would accept that construction. In other words, I don't know that they want to be saying, we're going to request someone on five charges and we'll accept that the United States court is only willing to consider those that are listed in the warrant. But if there's only one document and it's only a warrant, and the warrant only mentions three, what you call them, charges or accusations, period, then how could they get extradition or anything more? They'd have zero documents, and the government isn't saying zero is enough. I think the government is not agreeing with what the court's positing, which is that there's a construction by which this court could certify extradition on only those charges that are listed in the arrest warrant. What construction, then, are they? What is the opposing construction that you're asking us to reject if it's not that one? That as long as the arrest warrant lists one of the charges for which extradition is requested, this court, absent any other document, can extradite on any slew of charges. Okay, if we rejected that position, how does the fact that you're ascribing that position to the government bear on the question that we're pressing you on, which is what does the charges mean? You seem to think that because the government's taking that position, that makes it impossible for the charges to mean the arrest warrant, and I'm not quite following why that would follow. I think what I mean is looking at the whole provision in the extradition treaty as a whole. If we're looking just at the words, the charges, yes, I believe that means formal charges and all of the charges. But isn't that essential to your argument? Because I go back to the text here, a copy of the document setting forth the charges against the person sought. If we read that as saying there must exist somewhere a charging document of some formality like an indictment, then you win not only because they didn't submit it, but because it doesn't exist. But if we read charges as meaning accusations, and it doesn't have to be one particular type of document that sets forth the accusations, then it seems you would lose because the warrant does set forth the accusations, for at least some of the offenses. So I come back to what is it that you say we should rely upon to reject the proposition that it is reasonable to read charges as accusations? The canon against surplusage. In that situation, I'm not sure what meaning at all one would be giving to... Well, because suppose you had a warrant that just mentioned one thing and you had an indictment that mentioned four others. Then they would need to file both those documents to get all four. So it wouldn't be surplusage. In the circumstance in which they do give two documents? Sure. In other words, there would be circumstances where one document wouldn't necessarily suffice, but that doesn't mean that in all circumstances you'd need two documents. Well, I may be missing the question, but what I think is that there still has to be a plausible way to read the language of the treaty that gives each subsection meaning, and I'm not sure what that would be. Can I, just on that last exchange, is it your position that there needs to be a document showing that the person can be detained or arrested on each charge? Not in so many words. My position is that they have to have charged the person formally. If all there was was an indictment, everyone seems to agree that's not enough because there must be also some indication that they're going to detain or arrest the person, that they have the power to do it, correct? That's why there's the arrest and detention requirement document as well. There's a warrant document, but do you mean if there was just such a thing? Just an indictment would not satisfy it because we will not extradite to a country that hasn't shown it is going to detain or arrest the person under this treaty. Well, unless the indictment may give the authority to arrest and detain, and I assume that it would. But for my purposes, if the treaty... Well, then Judge Kayada's question to you becomes a pretty significant question that you need to answer. If you concede that an indictment alone would be enough to satisfy it so there doesn't need to be an arrest or a warrant for an arrest or an order of detention, then there's no surplusage problem because the arrest, warrant, order of detention could mention some charges and the indictment could list other charges. Well, so as to the first part of that question, if there were just an indictment, that is problematic under this language because it doesn't satisfy the warrant requirement. Well, that's what I was... What that suggests to me is that your position must be that as to each charge, there also must be an indication that the person can be arrested or detained on that charge through a formal arrest or detention document. Reading this language of the treaty, yes. Okay, given that, then there is a surplusage problem unless, at least as I see it, unless the arrest, warrant, or order of detention might mention no charge. If it's possible under Dominican procedure for a warrant of arrest or an order of detention to mention no charge, then there's not a surplusage problem because in that event, you would need a charging document separately to identify the charges. But if the arrest, warrant, or order of detention does mention a charge, you wouldn't necessarily need one. Again, I think the issue to me is the same. How are you going to read both sections? There has to be some meaning to the requirement of the document setting forth the charges against the person. If that means a formal indictment, then a formal indictment is required in any situation. It doesn't make sense to look at the arrest warrant to see what's in it in order to interpret the treaty in each case. But I only have a minute left, and I'm about to very briefly address the torture issues. I suspect that the court is inclined to find a ripeness problem, and what I want to do is just make sure we're clear about several sets of claims that have been made in this case. The initial outermost layer is that the Secretary of State does not have authority to look at the torture, the factual torture issue at all, because it's precluded from doing so. There's already been a determination, and the treaty does not confer the positive authority to extradite someone. But that assessment under the CAT treaty did not include... It has to make a risk assessment. What's the probability that there will be torture if we send back? So it looks at all the facts and it makes that risk assessment. When the Secretary of State is called upon to make that risk assessment, there's another factor that gets put into the mix, which is that the Secretary of State can obtain assurances from the foreign government regarding treatment of the person upon sending back. So it's a different calculus of a different risk. Why should that different calculus of that different risk be precluded by the earlier one on less information? Well, I welcome that question, because the same ability is available under the DOJ regulations. There's a specific mechanism and regulation inviting the Secretary of State to obtain diplomatic assurances. And they had the opportunity to do it in this case. I don't know whether they produced it... Did the BIA have that ability? No. Your time is up. Although you did not request rebuttal time, I will give you two minutes, if you need it, after the government argument. Okay, thank you. I just would start by circling back to one point about the treaty issue. We're in one of these somewhat common situations where one side is arguing the treaty plainly and unambiguously means one thing, and we're arguing the treaty plainly and unambiguously means another. The government's position is what it is, and I think we have the better of that argument. But assuming for the sake of argument that the treaty is unambiguous... I'm sorry. Assuming for the sake of argument that the treaty is ambiguous, the court is inclined or must find under controlling precedent in favor of extradition. That goes back to the Supreme Court's case in Factor v. Lautenheimer, which makes clear that in the extradition context, provisions that are ambiguous are to be read in favor of extradition to effectuate the will of the parties in the treaty. There's also another canon of construction, which is that if there is an ambiguity, one must defer to the State Department as the expert in these matters and, in fact, the keeper of the treaties. There's a third canon of construction, which you would defer to the views of the parties, and it's clear that both parties to the treaty, both the United States and the Dominican Republic, share one view of the treaty here. So, in effect, even if there are good points that are raised on the other side, I would posit at most, and the government still maintains that the treaty plainly means one thing, but I would posit at most there is an ambiguity that's raised, and that leads to the same point under all three of those canons of construction here. So, in some sense, some of the more complex issues there may drop away because even if the result of them is only ambiguity, it ends in the same place. Could you direct your attention to the exchange between Judge Barron and Ms. Barsky regarding does a warrant need to actually indicate what charges the person is being arrested for? So, if it's functioning as it is here, as the document setting forth the charges... Then it has to be. Yes. But suppose you have an indictment that indicts for A, B, C, and D. Can you have a warrant that mentions none of them? Well, the Eleventh Circuit in Hill said that the warrant could mention one of the charges. It need not mention all of them, and I think an example of that is one example would be the United States requests extradition on charge A that they've indicted on charge A and have an arrest warrant on charge A, and then later on the indictment is superseded and we supplement our extradition request with additional charges. It may not include an additional warrant that mentions those other charges. What difference does it make if you're extraditing for A or if you're extraditing for A, B, C, or D? You get on the same plane and go to the same place and you're there. Well, it makes a big difference in the extradition context, Your Honor, because the rule of specialty attaches that when the individuals returned to the foreign country they can only be prosecuted for subject to the rule of specialty on charges. On this example that you just gave, which is very helpful, if there was a superseding indictment, then you say you would amend the extradition request in order to overcome the rule of specialty so you could include that new charge, right? That's right. Wouldn't there also have to be under this treaty, going along with that new charge in the indictment, some order of detention or arrest warrant? Now, it could be the summons or something like that, but it wouldn't just be the indictment alone because there's still the documentary requirement of an arrest or an order of detention, right? Correct, but I think in the instance... No, go ahead. I think in the instance where we were merely supplementing to add additional charges, there's nothing that would prohibit the first arrest warrant from functioning as 7.3a is required. Why? The first arrest warrant wouldn't mention that offense. Well, perhaps this is not an apt analogy because I'm referring to the U.S. system. In the U.S. system, the documents setting forth the charges would typically be the information or an indictment, and there would separately be the arrest warrant. In the foreign system, as the Court of the Ninth Circuit made clear in Sames v. Venables, I know many civil law systems, arrest warrants function basically like speaking indictments. So it's just a difference between the two systems. Well, it matters to the surplusage point. That's why I'm pushing on it because it seems to me the point you make about ambiguity is a compelling one. But the main thing that might cut against it is if your interpretation resulted in a surplusage because that would be a pretty powerful argument for a clear conclusion in favor of your opponent. And so if every charge has to be accompanied by an arrest warrant or an order of detention, as the document would seem to suggest, then the surplusage point can only be overcome if it's possible to have an arrest warrant or order of detention that identifies no charge. That's why Judge Conopy asked you that question, and I'm just trying to figure out if there's an answer to it. Well, I think in some systems, I mean, the true answer to Your Honor's question is it would depend on the circumstances. But I mean, some systems, for example, in civil law, an arrest warrant is sometimes issued for somebody being, quote-unquote, in rebellion, i.e., they haven't shown up to court, sort of like a bench warrant here in the United States. So, again, that would go against the Eleventh Circuit's decision in Hill where it says that it must mention at least one charge. But in civil law, there is the theoretical possibility that this could happen. Counsel, I have a question. Yes, Your Honor. The government has urged on the very difficult habeas suspension clause issues that one of the options we might consider is finding it premature that the issues are not ripe until the secretary makes a decision. Your opponent has suggested it's possible there could be two rounds of habeas, this one and then possibly a later one, should the secretary decide to extradite with or without conditions. Is there some assurance you can give us that should the secretary so conclude that there would be adequate time for this petitioner to file the second round of habeas before the petitioner is removed? Your Honor, the government would follow its standard procedure in these cases which notifies the petitioner of the secretary's decision. Mr. Acquas Vivas and his counsel would receive a letter notifying them of the decision. And especially in light of this question from the court, we would certainly wait a reasonable amount of time, 14 days at least, before we would execute. Is there a regulation about this? There is not, Your Honor, that I can represent to the court that we would, in light of the court's question, that we would not effectuate a surrender warrant at least within a reasonable time, which I would say no sooner than 14 days. I'm going to press you a bit. Fourteen days does not leave much time for a habeas court to reach a decision, even on a motion to stay. It seems to me that 30 days is a more reasonable time period. Your Honor, if that's the court's preference, I would make that representation. Thank you very much. Thank you, Your Honor. We would ask the court to reverse. Two very brief points. One is on the issue of the charging document. I just want to point out that there's nothing to prevent the Dominican government, were this court to affirm on that basis from indicting and re-requesting him an extradition. It's not the end of their opportunity. Except it's inconsistent with their procedure, and they may prefer not to be inconsistent with their usual procedures. Go ahead. What's your second point? The second point I want to make is that were the court to decide against us on that issue and then separately the court would then need to reach something on the torture issues if it were to say this is premature, I ask that at minimum the district court should retain jurisdiction over the case. The judge has invested substantial time. No, it becomes a different case at that point. One question is whether we should retain jurisdiction, but I'm not certain that that's a very good idea. Well, I would ask for either one or the other for reasons of economy. Okay, thank you. Thank you. All rise. The court will take a brief recess. Thank you.